UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CARBON SOLUTIONS GROUP, LLC,** : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION NO. 3:23-cv-0609 |
| v. : | (JUDGE MANNION) |
| : | |
| **RAUSCH CREEK GENERATION, LLC**, : | |
| : | |
| Defendant. : | |

## MEMORANDUM

Presently before the court is Defendant Rausch Creek Generation's ("Rausch") motion to dismiss, (Doc. 14.), Plaintiff Carbon Solutions Group's (CSG) complaint, (Doc. 1), for failure to state a claim upon which relief may be granted. For the reasons stated below Rausch's motion is **DENIED**.

### I. Background

This is a dispute over Renewable Energy Certificates or RECs. RECs are tradeable non-tangible commodities representing the generation of renewable energy. (Doc 1 at ¶6). CSG, an environmental asset management and advisory firm, buys and otherwise trades RECs. (*Id*.) Rausch, the owner and operator of a 36.0-megawatt waste coal-fired power station near Tremont, Pennsylvania, generates and sells RECs. (*Id*. at ¶7.) Since at least 2018 CSG has bought RECs from Rausch. (*Id*. at ¶10.) In

December 2018, CSG agreed to buy approximately 173,000 RECs from Rausch representing energy generated in 2017 through 2019. (*Id*.) In February 2019, CSG agreed to buy another 768,498 RECs representing energy generated in 2018 through 2022. (*Id*. at ¶12.) The parties later reduced this volume to 648,498 RECs. (*Id*. at ¶14.) In all of these transactions, and consistent with industry custom, an independent broker issued a written confirmation to both parties memorializing the price, quantity, and delivery date for the RECs being transacted and stating that it represented a binding agreement between the parties. (*Id*. at ¶¶10-14.) CSG and Rausch thereafter promptly executed additional agreements fleshing out the terms of the given transaction in greater detail. (*Id*.)

In or about August 2020, CSG and Rausch began negotiating the purchase/sale of RECs representing energy generated in 2023 through 2028. On August 17, 2020, CSG, through a broker, proposed prices for these RECs. Rausch, through its Director of Real Estate Development, Arthur Diaz, notified the broker that it would agree to CSG's proposed price, if the broker lowered its commission. The broker lowered its commission and consistent with industry custom, as well as the parties' prior course of dealing, issued a written confirmation to both parties, memorializing the price ($3.17/REC), quantity (180,000 RECs/year), and delivery dates (on or before

7/15 following each generation year) for the 2023-2028 RECs. (*Id*. at ¶15.) Like all prior confirmations of transactions, the confirmation issued August 18, 2020, explicitly stated that unless the parties notified the broker of a discrepancy in the terms before 5:00pm CT the first business day after they received the confirmation, the parties agreed the terms therein were binding. (*Id*. at ¶18.) Rausch did not notify the broker of any discrepancy or otherwise object to the terms contained in the August 18, 2020, confirmation of transaction within the requisite timeframe. (*Id*. at ¶19.)

On August 24, 2020, CSG, consistent with prior transactions, sent Rausch a draft of terms fleshing out the details of the transaction. (*Id*. at ¶21.) However, unlike with prior transactions, Rausch did not promptly countersign the draft. (*Id*. at ¶22.) On September 15, 2020, Rausch returned a redline of the draft to CSG. (*Id*. at ¶23.) On September 23, 2020, CSG accepted all the changes in Rausch's redline. (*Id*. at ¶24.) On October 4, 2020, Rausch requested to raise the price of RECs to $3.94/REC. On October 5, 2020, CSG agreed to this price. (*Id*. at ¶25.) Having received no further communication from Rausch, CSG, on October 19, 2020, asked Arthur Diaz: "What are the next steps here? I think we've agreed to all terms and price." (*Id*. at ¶26.) Diaz responded: "Yes. I believe we are in agreement on all contract terms." (*Id*.)

CSG circulated a finalized draft with all additional terms on October 30, 2020. (*Id.* at ¶27.) On November 4, 2020, Bob Rivkin, the principal of Rausch, notified CSG that due to another transaction he had not yet reviewed the draft and Arthur Diaz would be in touch as soon as he did. (*Id.* at ¶28.) Nonetheless Arthur Diaz did not get in touch with CSG. (*Id.* at ¶29.) A few weeks later Pennsylvania amended its law concerning RECs which had the effect of *inter alia* increasing the value of Rausch's RECs. (*Id.* at ¶30.) CSG alleges that Rausch knew the passage of this legislation was imminent and intentionally delayed formalizing the additional terms of its 2023-2028 deal with CSG so that it could sell the RECs for a higher amount after the law passed. (*Id.* at ¶31.)

Pursuant to the additional terms drafted after August 18, 2020, CSG claims that Rausch agreed to deliver the first RECs due to CSG thereunder by August 16, 2022.[1] (*Id.* at ¶32.) Rausch did not deliver any RECs to CSG on or before August 16, 2022. Again, pursuant to the terms drafted after August 18, 2020, CSG sent Rausch a notice of default on August 22, 2022.

---

[1] CSG does not cite, and the court cannot find, where in its exhibits the delivery deadline of August 16, 2022, is stated. However, Rausch only motions to dismiss on the basis that it did not agree to a contract with CSG, not that it did not breach its contract with CSG by failing to deliver RECs on or before August 16, 2022. Nor does Rausch otherwise question the legal significance of that date. Thus, the court is required, at this stage of the proceeding, to assume that date is the true delivery date.

(*Id*. at ¶34.) Rausch did not cure this default. (*Id*.) On August 26, 2022, CSG sent Rausch an invoice for its damages under the terms drafted after August 18, 2020. (*Id*.) Rausch has not paid this invoice. (*Id*.) Accordingly, CSG brought the instant action alleging one count of breach of contract by Rausch for failing to comply with the agreement confirmed on August 18, 2020, and the additional terms drafted thereafter.

## II.     Legal Standard

Defendant's motion to dismiss is brought pursuant to Rule(12)(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the complaint fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F. 3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all the facts alleged in the complaint as true, the non-moving party has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). The facts alleged must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This requirement "calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" of

necessary elements of the non-moving party's cause of action. *Id.* Furthermore, to satisfy federal pleading requirements, the non-moving party must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Phillips v. County of Allegheny*, 515 F. 3d 224, 231 (3d Cir. 2008) (brackets and quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555).

In considering a motion to dismiss, the court generally relies on the complaint, attached exhibits, and matters of public record. *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007). The court may also consider "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached] documents." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Moreover, "documents whose contents are alleged in the complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered." *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). However, the court may not rely on other parts of the record in determining a motion to dismiss. *See Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1261 (3d Cir. 1994).

Finally, "[i]nasmuch as Pennsylvania law governs this action[,] we treat Pennsylvania Supreme Court opinions as binding precedent and Pennsylvania Superior Court opinions as persuasive precedent." *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 107 n.2 (3d Cir. 2009).

### III.   Discussion

Rausch moves to dismiss CSG's one count of breach of contract on the basis that the confirmation of transaction dated August 18, 2020, does not constitute a binding agreement under Pennsylvania law, and that it never accepted the additional terms drafted after August 18, 2020. According to Rausch the documents submitted by CSG merely evidence negotiations on a transaction that was never consummated. Nonetheless CSG argues that there is a question of fact as to whether the parties reached an agreement on the essential terms which they intended to be binding.

To form a contract under Pennsylvania law, there must be an offer, acceptance, and consideration or mutual meeting of the minds. *Jenkins v. Cnty. of Schuylkill*, 658 A.2d 380, 382 (1995). "The test for enforceability of an agreement is whether both parties have manifested an intention to be bound by its terms and whether the terms are sufficiently definite to be specifically enforced." *Channel Home Centers, Div. of Grace Retail Corp. v. Grossman*, 795 F.2d 291, 298 (3d Cir. 1986) citing *Lombardo v. Gasparini*

*Excavating Co.*, 385 Pa. 388, 393 (1956). However, "if the parties agree upon essential terms and intend them to be binding, 'a contract is formed even though they intend to adopt a formal document with additional terms at a later date.'" *Johnston v. Johnston*, 499 A.2d 1074. 1076-1077 (1985) quoting *Courier Times, Inc. v. United Feature Syndicate, Inc.,* 54, 445 A.2d 1288, 1295 (1982); see also Restatement of Contracts (Second) §27 (1979). Furthermore, the intent of the parties is a question of fact which must be determined by the factfinder. *Yellow Run Coal Co. v. Alma-Elly-Yv Mines, Ltd.,* 426 A.2d 1152, 1154 (1981).[2]

      CSG alleges that on August 17, 2020, it made an offer to Rausch through a broker. Rausch, also through a broker, accepted that offer. The offer included essential terms of the transaction *i.e.*, the price, quantity, and delivery date of the 2023-2028 RECs. The broker confirmed the agreement the next day. Neither party objected to the substance of these terms or the broker's notice that the terms were binding. Thus, CSG has plausibly alleged the confirmation of transaction dated August 18, 2020, evidences a contract.

---

[2] The parties also dispute the applicability of the UCC to a contract for RECs. CSG defines RECs as "non-tangible" commodities, (Doc. 1 at ¶6), and even the energy they represent is not consider a good under Pennsylvania law. *See Schriner v. Pennsylvania Power & Light Company*, 501 A.2d 1128, 1134 (Pa. Super. Ct. 1985). Thus, the UCC does not appear applicable to the instant dispute.

The fact that the parties, like they had in all prior transactions, intended to adopt a more formal document with additional terms at a later date does not negate the validity of the agreement confirmed in writing on August 18, 2020. *See Johnston*, 499 A.2d at 1076-1077. Likewise, Rausch intent or lack thereof in accepting this agreement is a question of fact not appropriate for consideration on a motion to dismiss. *See Yellow Run Coal Co.* 426 A.2d at 1154. Rausch also claims that the August 18, 2020, confirmation of transaction omits several material terms. But just as Rausch disputes CSG's labeling of certain terms material as an impermissible legal conclusion, Rausch's claims of materiality are also legal conclusions and thus of no moment to the court. *See Fowler v. UPMC Shadyside,* 578 F. 3d at 210-211; *see also ATACS Corp. v. Trans World Commc'ns, Inc., 155 F.3d 659, 667 (3d Cir. 1998)* citing *Kuss Mach. Tool & Die Co. v. El–Tronics, Inc.,* 393 Pa. 353, 143 A.2d 38, 40 (1958) (the omission of an essential term in a contract, such as price, does not vitiate contract formation if the parties otherwise manifested their mutual assent to the agreement and the terms of that agreement are sufficiently definite). Nonetheless, the breach alleged herein is not of the terms stated in the August 18, 2020, confirmation of transaction but of the subsequently negotiated additional terms.

CSG, alleges that on August 24, 2020, it directly made on offer to Rausch with more detailed terms supplementing the essential terms agreed to on August 18, 2020. Rausch did not accept this offer and instead returned a counteroffer on September 15, 2020. CSG accepted that counteroffer in its entirety on September 23, 2020. Thus, CSG has plausibly pled that the parties also adopted these terms as part of their contract. On October 4, 2020, Rausch allegedly offered another additional term or amendment to the contract, specifically to raise the price of the RECs. CSG accepted on October 5, 2020, and thus this term too became part of a valid contract. Rausch claims that this change demonstrates the price in the August 18, 2020, confirmation of transaction was not final. However, whether and when Rausch intended to be bound to a particular price is again a question of fact. CSG has plausibly alleged that the additional terms accepted September 23, 2020, and October 5, 2020, are part of a valid contract.

On October 19, 2023, Arthur Diaz confirmed Rausch's agreement to the additional terms, CSG circulated a final draft with these terms on October 30, 2020. Rausch neither accepted nor rejected this draft but that fact does not negate the terms therein because as previously stated CSG has plausibly alleged these terms were already offered and accepted. Still Rausch claims that only its principle, Bob Rivkin, had authority to bind Rausch and the fact

that he specifically did not sign the finalized additional terms is fatal. Neither party properly briefs this issue. But Rausch does not explicitly argue Diaz lacked actual or apparent authority to bind it and CSG's complaint appears to assume that Diaz did have such authority. Since the court must accept the allegations in the complaint as true, the court must assume the same. Accordingly, CSG has plausibly alleged a contract existed between it and Rausch.

## IV.    Conclusion

In light of the foregoing, the court will **DENY** Defendant Rausch's motion to dismiss. (Doc. 14.) An appropriate order follows.

*s/ Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: December 4, 2023**
23-0609-01